[Cite as *Wallace v. Willoughby*, 2011-Ohio-3008.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

WILLIAM WALLACE, IV,

     PLAINTIFF-APPELLEE,               CASE NO.  17-10-15

     v.

AMBER WILLOUGHBY,             O P I N I O N
NKA HERRON,

     DEFENDANT-APPELLANT.

**Appeal from Shelby County Common Pleas Court
Juvenile Division
Trial Court No. 2002-PAT-0002**

**Judgment Affirmed**

**Date of Decision:   June 20, 2011**

APPEARANCES:

     *Kimberly S. Kislig*  for Appellant

     *Roberta S. Roberts* for Appellee

**ROGERS, P.J.**

{**¶1**} Defendant-Appellant, Amber Willoughby, appeals the judgment of the Court of Common Pleas of Shelby County, Juvenile Division, granting Plaintiff-Appellee, William Wallace, IV, residential parent status of their two children, William Wallace, V, ("William") and Seth Wallace ("Seth"). On appeal, Willoughby argues that the trial court erred when it refused to consider additional evidence; that the trial court erred in finding that a change in circumstances had occurred; that the trial court's decision was not in the best interests of the children; and, that the trial court did not properly weigh the advantages and disadvantages of changing the residential parent. Based upon the following, we affirm the judgment of the trial court.

{**¶2**} Willoughby and Wallace, who never married, had two children together, William and Seth.[1] In February 2002, Willoughby and Wallace filed a joint motion for shared parenting. In March 2002, the trial court issued a shared parenting decree.

{**¶3**} In March 2003, Willoughby filed a motion requesting termination of the shared parenting plan and for designation as residential parent. In November 2003, the trial court issued a judgment entry modifying the parental rights and responsibilities, naming Willoughby as the residential parent and legal custodian

---

[1] In March 2002, the trial court found that Wallace was the natural father of William and Seth.

of William and Seth. Subsequently, Willoughby married Fred Herron. Willoughby and Herron have two children together, Levi, age 3, and Roslyn, age 2.

{¶4} In January 2010, Wallace filed a "Motion to Reallocate Parental Rights and Responsibilities, or in the Alternative, Shared Parenting." Specifically, Wallace requested the trial court to designate him as the sole custodian of William and Seth, or in the alternative, order a shared parenting plan designating him as the residential parent. Wallace's motion stemmed from Willoughby's upcoming move from Sidney to Ansonia, Ohio, and the effects such move would have on William and Seth.

{¶5} In February 2010, the magistrate conducted an in camera interview of William and Seth, independently of each other. During the magistrate's interview with Seth, who was eleven at the time, Seth expressed a great desire to reside with Wallace, whereas William, who was twelve at the time, did not have an opinion on the matter. Later that month, Wallace filed a proposed shared parenting plan, to which Willoughby objected.

{¶6} In March 2010, the matter proceeded to a final hearing, at which the following pertinent facts were adduced. Seth and William, until their recent move to Ansonia, had lived their entire life in Sidney, where much of Wallace's and Willoughby's family reside. Wallace currently resides in Sidney. After becoming

the residential parent in 2003, till her move to Ansonia in February 2010, Willoughby lived in six different residences in Sidney. During most of that time the children attended Christian Academy School ("Christian") in Sidney. After the 2008-2009 school year William and Seth were enrolled at Northwood elementary school, a public school in Sidney. Halfway through the 2009-2010 school year Willoughby and Herron moved to Ansonia, where William and Seth were enrolled in one of Ansonia's public schools.

**{¶7}** Testimony was heard concerning William's and Seth's history of tardiness and absences from school. Throughout their schooling at Christian and Northwood, William and Seth were often tardy and absent. In the 2006-2007 school year William was absent for nine and a half days and tardy thirty-eight days, while Seth was absent ten days and tardy thirty-one days. In the 2007-2008 school year William was absent for nine and a half days and tardy sixty-three days, while Seth was absent eight and a half days and tardy fifty-two days. Willoughby testified that the high incidents of tardiness and absences were due to William's and Seth's medical issues, and that the high numbers may also be the result of a computer glitch. Denae Perkins, Wallace's sister, testified that her children would often carpool with Willoughby to school, but that she discontinued the arrangement because Willoughby would, at times, not drop the children off at

school on time. Wallace testified that when he learned of the attendance problems he offered to take the boys to school and did so on several occasions.

**{¶8}** Testimony was also heard about the parents' involvement with William's and Seth's education. Both Wallace and Willoughby have attended parent-teacher conferences. Both testified that they assist the children with their homework. Despite this testimony Willoughby testified that Wallace has not played an active role in William's and Seth's education. Wallace testified that while he did not go out of his way to introduce himself to the faculty at Christian, he has played an active role in William's and Seth's education. In support, Wallace testified that in May 2009 Willoughby took the children out of school to visit her father in Missouri, who had injured his ankle. Wallace offered to take the children during that time period so they could attend school, but Willoughby declined the offer. When they returned from Missouri Seth was behind in his schoolwork. Willoughby testified that Seth was behind due to his teacher's failure to send his schoolwork. Wallace testified that upon returning home he and his fiancé, Alicia Francis, helped Seth finish his overdue schoolwork. To support this fact, Wallace introduced several emails between him and Seth's third grade teacher, in which Seth's teacher thanks Wallace for helping Seth finish his overdue schoolwork.

{¶9} Testimony was also heard concerning the parents' involvement in their children's athletics. Wallace testified that he consistently encourages his children to take part in sports, and that he never forces his children to be involved in sports. Willoughby testified that she and Herron are less interested in the children's athletics. Perkins testified that her son plays on the same teams as William and Seth, and that Wallace attends all of the children's games, whereas she has seen Willoughby at only three of the children's games.

{¶10} Testimony was also heard concerning Seth's immunizations. Evidence was presented that Seth had not received his fourth DTAP booster shot. Wallace produced evidence that Willoughby had received notices in 2005, 2007, and 2008 about Seth's failure to receive his fourth DTAP booster shot. In November 2009, Willoughby signed an immunization exemption form, stating that she believed it was too late for Seth to receive the shot. Willoughby also testified that she believed Seth's immunization records may have been misplaced as a result of one of her moves, and that she believes Seth is current on all of his immunizations.

{¶11} Testimony was also heard concerning Wallace's alleged short temper and violent nature. Willoughby testified about two incidents, which she claimed exemplify Wallace's short temper and violent nature. The first incident occurred in September 2005, when William came home from Wallace's residence with a

laceration on his finger. Eight days later Willoughby took William to the hospital, where William was diagnosed with a broken finger. The incident was reported to Children Services. A Children Services report stated that Wallace admitted to spanking William, and that William, in an effort to shield the spanking, placed his hand between himself and Wallace's hand causing Wallace to strike William's hand. Ultimately, Children Services terminated the case as "unsubstantiated."[2] The second incident occurred in 2009. Herron was out of town when Wallace received a call from Willoughby. Willoughby was having difficulty controlling Seth and asked Wallace to come over and support her. The difficulty stemmed from an argument between Seth and Willoughby pertaining to Seth's desire to reside with Wallace. Wallace testified that he spanked Seth once. Willoughby testified that she had to restrain Wallace's hand to prevent a second spank. Wallace further testified that Seth visited him the next day with no visible injury. The incident was never reported to the police or Children Services. In addition to these incidents Janice Bertsch, Wallace's ex-fiancé and girlfriend of five-years, testified that Wallace had once thrown a dish out of anger, that he often spoke negatively of Willoughby in the children's presence, and that he used a belt to spank the children. Francis testified that she moved in with Wallace in 2008, and

---

[2] A Children Services case terminated as "unsubstantiated" means the investigation resulted in a determination that child abuse could not be proven.

that she has not been the victim of or witnessed any violent behavior from Wallace towards her or the children.

{¶12} Lastly, testimony was heard concerning the effect of separating William and Seth. Every witness that was questioned on the matter testified that William and Seth should not be separated.

{¶13} Upon considering the testimony and evidence proffered during the final hearing, as well as the in camera interviews with William and Seth, the magistrate recommended that Wallace be designated as the residential parent of the children.

{¶14} In April 2010, Willoughby timely objected to the magistrate's decision. Willoughby's objection reads, in pertinent part:

> **Pursuant to Civil Rule 53(D), Defendant, Amber Willoughby nka Herron ("Mother"), by and through counsel, hereby objects to the Magistrate's Decision issued March 23, 2010 * * *. Specifically, the Mother objects to the Magistrate's findings of fact; conclusions of law; discussion; and decision regarding the allocation of the residential parent of the minor children of the parties * * *. The Mother states that the findings of fact; conclusions of law; discussion; and decision regarding the allocation of the residential parent of the Minor Children are not supported by the record of the case and law.**

{¶15} Prior to the trial court filing its judgment entry, but subsequent to her objections, Willoughby filed several motions requesting the trial court to consider additional evidence, to wit: a request for a guardian ad litem report, an updated

psychological evaluation of Wallace, a second in camera interview with the children, and Wallace's return to work. The trial court denied all motions.

{¶16} In July 2010, the trial court, in overruling Willoughby's objection to the magistrate's decisions, found as follows:

> **Addressing the Magistrate's recommendations that a "change in circumstance" has occurred in this matter by virtue of: 1) the Defendant's relocation (from Sidney) to Ansonia, Ohio; 2) the wishes of Seth to reside with his father; and 3) the enrollment of the children in three different schools in a 8-9 month period, this Court finds that competent and credible evidence exists in the record to make such findings. The above facts were not in dispute throughout the custodial proceedings. Hence, proof of a change in circumstances exists in the record to make the finding (regarding a change in circumstances) concerning Seth.**
>
> **In analyzing whether or not a change of circumstances exists regarding (young) William, the Court has examined the record and finds that every witness testifying as to "splitting up" William and Seth agreed that the two boys should remain together. Compliment this evidence with the above change of circumstances evidence set forth (regarding Seth) above, the Court finds a change of circumstances exists relative to William.**
>
> **\* \* \***
>
> **The Court's independent review of the evidence is in concert with the Magistrate's decision relative to the finding of a change in circumstances regarding William and Seth. The Magistrate's Decision fulfills the due diligence for a trial court to develop facts, analyze evidence and apply the law in arriving at a recommendation in regard to a change of circumstance. Accordingly, the Court finds through its independent review of this matter that the plaintiff has met the burden of proving that a change has occurred in the circumstances of William and Seth.**

**[Trial Court sets forth the best interest factors of R.C. 3109.04(F)(1)]**

**Applying the above factors to the evidence in this case, specifically the *in-camera interview* of William and Seth as it relates to factors (b) and (c) above, the Court finds that Seth is adamant about living with his fatter (sic), that Amber talked with Seth the night prior to the in-camera interview in hopes of "changing" Seth's mind, and that Seth's relationship with Levi and Roslyn is not as represented by Defendant.**

**Relative to factors (sic) (d) above, William and Seth's schooling is a concern to the Court in relation to their conduct, absences, tardies and school stability. The evidence from both parties paints a picture that academics are not a strong priority. Also relevant to this factor is both boys adjustment to their community. Both have been active in sports year round and both enjoying friendships among peers in Sidney.**

**Regarding factor (e) above, the Defendant has not been diligent in providing Seth with necessary and timely immunizations.**

**The evidence is unrevealing as to factor (f). But as to the factor (g), the evidence is clear that the Plaintiff is current in his support obligation, including any past arrearages, for William and Seth. Further, the Plaintiff has neither been convicted of a violation of R.C. 2919.25 nor been found to be the perpetrator of an abusive or neglectful act toward William, IV (sic) or Seth under factor (h) above. The Court disagrees with the posturing of Defendant (i.e. pleadings and memoranda) referring to Plaintiff as a child abuser and a person convicted of domestic violence. These insidious harangues are unwarranted.**

**Summarizing the "best interests" factors, the Court's independent review and analysis of the evidence finds factors (b), (c), (d), (e), and (h) of R.C. 3109.04(F)(1), pivotal in deciding the best interests of William and Seth. The Court agrees with the Magistrate that the credibility of the Defendant is a concern, through her evasive and non-responsive testimony as well as less**

**than credible pleadings. Based upon the foregoing, the Court concludes that it is in the best interests of William, V. (sic) and Seth to reside with the Plaintiff effective forthwith.**

{¶17} It is from this judgment that Willoughby appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED WHEN IT REFUSED TO CONSIDER, AS ADDITIONAL EVIDENCE FOR DEFENDANT-APPELLANT'S OBJECTION: 1) HER REQUEST FOR A GUARDIAN AD LITEM REPORT; 2) HER REQUEST FOR AN UPDATED PYSCHOLOGICAL EVALUATION; 3) HER REQUEST FOR A SECOND IN-CAMERA INTERVIEW; AND/OR 4) HER NOTICE THAT THE PLAINTIFF-APPELLEE HAD RETURNED TO WORK, WHEN HE WAS UNEMPLOYED AT THE TIME OF THE ORIGINAL MAGISTRATE'S DECISION, WHEN SUCH ADDITIONAL EVIDENCE WAS NECESSARY TO MAKE THE MOST APPROPRIATE DECISION FOR THE PARTIES' MINOR CHILDREN.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED WHEN IT FOUND THAT A SUBSTANTIAL CHANGE IN CIRCUMSTANCES HAD OCCURRED WHEN THE ONLY MAJOR CHANGE THAT OCCURRED, WHICH WAS A POSITIVE CHANGE, WAS THAT THE DEFENDANT–APPELLANT MOVED TWENTY-NINE (29) MILES AWAY BECAUSE HER HUSBAND WAS TRANSFERRED.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED WHEN IT HELD THAT IT WAS IN THE BEST INTERESTS OF THE PARTIES' MINOR CHILDREN FOR THE PLAINTIFF-APPELLEE TO BE**

**NAMED THE RESIDENTIAL PARENT BECAUSE THE FACTS USED TO SUBSTANTIATE SUCH HOLDING WERE SLANTED TOWARD THE PLAINTIFF-APPELLEE – USING UNBIASED FACTS WOULD LEAD TO A HOLDING THAT IT IS IN THE BEST INTERESTS OF THE PARTIES' MINOR CHILDREN THAT DEFENDANT-APPELLANT REMAIN AS RESIDENTIAL PARENT.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED WHEN IT DID NOT CONSIDER WHETHER THE HARM LIKELY TO BE CAUSED BY A CHANGE IN THE ENVIRONMENT BY A CHANGE IN THE RESIDENTIAL PARENT WAS OUTWEIGHED BY THE ADVANTAGE OF THE CHANGE OF THE ENVIRONMENT FOR THE PARTIES' MINOR CHILDREN.**

{¶18} Due to the nature of Willoughby's assignments of error, we elect to address her second, third, and fourth assignments of error together and first.

*Assignments of Error Nos. II, III & IV*

{¶19} In her second, third, and fourth assignments of error, Willoughby contends that the trial court erred in designating Wallace as the residential parent. Specifically, Willoughby contends that the trial court erred in finding that a substantial change occurred as a result of her moving twenty-nine (29) miles away; that designating Wallace as the residential parent is not in the best interests of the children; and, that the trial court did not properly weigh the advantages and disadvantages of designating Wallace as the residential parent. We disagree.

**{¶20}** As a preliminary matter we note that Willoughby's objections to the magistrate's decision do not meet the specificity requirement set forth in Civ.R. 53(D)(3)(b)(ii). Civ.R. 53(D)(3)(b)(ii) provides that "an objection to a magistrate's decision shall be specific and state with particularity all the grounds for objection." "[U]nder Civ.R. 53[D](3)(b)[ii], objections must be more than 'indirectly addressed': they must be specific." *Young v. Young,* 9th Dist. No. 22891, 2006-Ohio-2274, ¶5, quoting *Ayer v. Ayer* (2000), 1st Dist. No. C-990712, 2000 WL 864459, at 3. When an objecting party fails to state an objection with particularity as required under Civ.R. 53(D)(3)(b)(ii), the trial court may affirm the magistrate's decision without considering the merits of the objection. *Triozzi-Hartman v. Hartman,* 11th Dist. No. 2006-G-2701, 2007-Ohio-5781, ¶15, citing *Waddle v. Waddle*, 11th Dist. No. 2000-A-0016, 2001 WL 314659. "Except for a claim of plain error, a party shall *not assign as error on appeal* the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion *as required by Civ.R. 53(D)(3)(b).*" Civ.R. 53(D)(3)(b)(iv) [Emphasis Added.]

**{¶21}** Reviewing Willoughby's objections we find that they do not meet the specificity requirement set forth in Civ.R. 53(D)(3)(b)(ii), as they baldly assert an objection to the magistrate's findings of fact and conclusions of law. Consequently, Willoughby is precluded from assigning the trial court's disposition

of her objections as error on appeal. Civ.R. (D)(3)(b)(iv). Nevertheless, the trial court determined that Willoughby's objections were ripe for consideration, and proceeded to consider her objections, albeit it with some difficulty.[3] Therefore, in the interest of justice we will address the merits of Willoughby's objections.

{¶22} Decisions concerning child custody matters rest within the sound discretion of the trial court. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74. Custody determinations are some of the most difficult and agonizing decisions a trial judge must make, and, therefore, appellate courts must grant wide latitude to their consideration of the evidence. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 1997-Ohio-260. Therefore, a reviewing court will not reverse a trial court's decision regarding child custody absent an abuse of discretion. *Masters v. Masters* (1994), 69 Ohio St.3d 83, 85, 1994-Ohio-483.

{¶23} A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. See *State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶¶17-18, citing Black's Law Dictionary (8 Ed.Rev.2004) 11. When applying the abuse of

---

[3] Although the trial court addressed the merits of Willoughby's objections, the trial court noted that it had difficulty in understanding her objections, stating "Defendant's argument disputing a change in circumstances for either William or Seth is unclear. It seems to concede the issue, yet rehashes evidence from the parties' custody trial of 2003, which is not relevant in this case. Further, Defendant's argument is difficult to follow as it contains excessive asides, editorial comments and innuendo's (sic) which are merely opinions and attitudes of counsel." July 2010, Judgment Entry, pp. 6-7.

discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶24} R.C. 3109.04(E) governs modification of prior court orders allocating parental rights and responsibilities and provides as follows:

> **(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:**
>
> * * *
>
> **(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.**

Thus, in order for a trial court to modify a prior allocation of parental rights and responsibilities, it must make a threshold finding that a change in circumstances has occurred, and, if so, it must then determine that the modification is in the best interests of the children. *Wooten v. Schwaderer,* 3d Dist. No. 14-08-13, 2008-Ohio-3221, ¶3; *Fox v. Fox,* 3d Dist. No. 5-03-42, 2004-Ohio-3344, ¶38, citing *Clark v. Smith* (1998), 130 Ohio App.3d 648, 653.

A. Change in Circumstances

**{¶25}** In determining whether a change in circumstances has occurred, the change must be "a change of substance, not a slight or inconsequential change." *Davis*, 77 Ohio St.3d at 418. "[T]he changed conditions * * * must be substantiated, continuing, and have a materially adverse effect upon the child[ren]." Id. at 417, quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416. The latter is the paramount issue. Id. However, R.C. 3109.04(E)(1)(a) does not require that the change be substantial, nor does the change have to be quantitatively large, but rather, must have a material effect on the children. *McLaughlin v. McLaughlin–Breznenick,* 3d Dist. No. 8-06-06, 2007-Ohio-1087, ¶16, citing *In re Tolbert v. McDonald,* 3d Dist. No. 1-05-47, 2006-Ohio-2377, ¶31, citing *Green v. Green,* 3d Dist. No. 14-03-29, 2004-Ohio-185, ¶7.

**{¶26}** Willoughby contends, in piecemeal form, that that trial court did not find that her move to Ansonia had a materially adverse effect upon William and Seth, that Seth's desire as to custody should not be considered as it is already considered in the best interest analysis, and that Wallace failed to provide evidence that attending school in Ansonia would have a materially adverse effect upon William and Seth. We disagree.

**{¶27}** We first note that Willoughby appears to contend that the trial court must find that each basis tending to demonstrate a change in circumstances must

have a materially adverse effect on the child. Such an approach distorts reality. The proper approach is to consider the total effect of the facts alleged to have resulted in a change in circumstances. For instance, it is well settled that relocation of the residential parent, in and of itself, does not constitute a change in circumstances. See *Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599, 604. However, it is equally settled that a court may consider any attendant circumstances surrounding a residential parent's relocation that affects the child's welfare in determining whether a change in circumstances has occurred. See *Hanley v. Hanley*, 4th Dist. No. 47CA35, 1998 WL 372685, citing *Green v. Green*, 11th Dist. No. 96-L-145, 1998 WL 258434. Accordingly, we must determine whether the trial court, in considering the evidence in its entirety, abused its discretion in finding that a change in circumstances occurred.

{¶28} Turning to the facts of the case, we find that the trial court did not abuse its discretion in finding that a change in circumstances occurred. From 2003 to 2008 the children, with Willoughby as the residential parent, experienced a relatively stable existence. However, the record reveals a shift in 2008, beginning with Seth's desire to reside with Wallace. Seth's desire was so strong that Willoughby permitted Seth to stay with Wallace for three months. Further evidence of Seth's desire to reside with Wallace appears when Willoughby, unable to reason with Seth about living with Wallace, called Wallace over to her

residence to reason with and control Seth. In addition to viewing this event in terms of Seth's desire to live with Wallace, the event can also be viewed as demonstrating Willoughby's inability to control Seth. Also during this time William and Seth were enrolled in three different schools within a span of nine months. Changing schools for any child can be difficult, but attending three different schools in a span of nine months can severely tax a child's ability to perform at school, make friends, and be materially involved in extracurricular activities. In fact, in their short time at Northwood, William and Seth had made friends and were involved in extracurricular activities such as basketball and student council. However, as a result of their relocation to Ansonia, the children were not afforded much time to develop those relationships and experiences. Although Ansonia is roughly thirty miles west of Sidney, it is an unfamiliar town to William and Seth, who have lived their entire lives in Sidney. In addition, much of Wallace's and Willoughby's family, with whom William and Seth are close, reside in Sidney. Taken together, we find that the trial court did not abuse its discretion in finding that a change in circumstances had occurred, as it was not unreasonable to find that the cumulative effect of these changes had a material effect on the children.

B. The Children's Best Interests

**{¶29}** Next, we turn to Willoughby's contention that designating Wallace as the residential parent was not in the children's best interests.

**{¶30}** In determining the best interests of the children pursuant to R.C. 3109.04(B)(1), trial courts are directed to consider all relevant factors, including those specifically enumerated under R.C. 3109.04(F)(1):

**(a)   The wishes of the child's parents regarding the child's care;**

**(b)   If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**

**(c)   The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

**(d)   The child's adjustment to the child's home, school, and community;**

**(e)   The mental and physical health of all persons involved in the situation;**

**(f)   The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g)   Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child[;]\* \* \***

**(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;**

**(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.**

{¶31} With respect to factors (a), (f), (i), and (j) above, the trial court found these factors to either be unavailing in determining the children's best interests or inapplicable.  We agree, and thus we decline to consider these factors.

{¶32} First, with respect to factor (b), Willoughby contends that Seth's interest in living with her is on par with his interest in living with Wallace, and that Seth's desire to live with Wallace is driven by his belief that he would have a better time.  The magistrate's interview with a child is confidential, thus we are reluctant to discuss specifics from Seth's interview.  See *Willis v. Willis* (2002), 149 Ohio App.3d 50, 2002-Ohio-3716, ¶26, and *Patton v. Patton* 5th Dist. No. 94 CA 40, 1995 WL 42497.  However, we have reviewed the transcript of Seth's interview and find that the trial court's conclusion that this factor favored Wallace was supported by competent, credible evidence.

{¶33} Next, with respect to factor (c), Willoughby contends that designating Wallace as the residential parent will detrimentally affect Seth's and William's relationship with their younger siblings, Levi and Roslyn, and their step-father, Herron. While designating Wallace as the residential parent will undoubtedly affect William's and Seth's relationship with Levi, Roslyn, and Herron, the same is true with respect to William's and Seth's relationship with their family in Sidney if they continue to live in Ansonia. William and Seth have lived in Sidney their entire lives and much of Wallace's and Willoughby's family reside in and around Sidney. Testimony reveals that the boys are close to both sides of their family in Sidney and interact with them routinely. Comparatively, William and Seth have only known Levi and Roslyn for a couple years. Moreover, the difference in age between the children is such that William and Seth likely do not have a mature relationship with Levi and Roslyn, as they seemingly do with their family in Sidney. Consequently, we find that there was competent, credible evidence to support the trial court's finding that this factor favored Wallace.

{¶34} Next, with respect to factor (d), Willoughby baldly contends that the children have adjusted to their new school and community in Ansonia. Review of the record reveals otherwise. William's and Seth's lives are deeply rooted in Sidney. Much of their mother's and father's family reside in Sidney. All of their

schooling has occurred in Sidney. All of their friends live in Sidney. Both are active in Sidney athletics, and desire to remain active in Sidney athletics. Consequently, it would appear that William and Seth are well adjusted to their lives in Sidney. Conversely, there is little evidence that William and Seth have had the opportunity to adjust to life in Ansonia. The little evidence there is concerning William's and Seth's adjustment to Ansonia tends to demonstrate that the children are not adjusting to the community. For instance, the record reveals that William and Seth would like to remain involved in Sidney athletics, beyond the seasons they started while they resided in Sidney. These are not the wishes of children who are adjusted to life in Ansonia. There is also evidence that the children are having difficulty adjusting to their new school. While this is not unexpected, it is nonetheless relevant in considering whether the children are adjusting to life in Ansonia. In addition, testimony was heard about William's and Seth's high incidents of tardiness and absences from school. When the children lived in Sidney they had a familial network which could transport them to school when Willoughby was running behind. In fact, Wallace testified that on several occasions Willoughby asked him to take the children to school because she was running late. Now that Willoughby and the children are removed from that support network there is no guarantee that someone will be able to transport the children to school on time when Willoughby runs late. Ultimately, this will affect

the children's ability to adjust to their new school. In light of the foregoing, we find that there was competent, credible evidence to support the trial court's finding that this factor favored Wallace.

{¶35} Next, with respect to factor (e), Willoughby contends that Wallace has mental health issues and a history of domestic violence. Upon review of the record, we find that both of these contentions are unsupported. Testimony did reveal two incidents involving Wallace spanking the children, which is not, per se, domestic violence. Although one of the incidents was reported to Children Services, it was determined to be unsubstantiated. In addition, Bertsch, Wallace's ex-fiancé, testified that Wallace had thrown a plate out of anger and spanked the children with a belt. Francis, Wallace's current fiancé, however, testified that after living with Wallace for nearly two years she has neither been the victim of or witness to Wallace's allegedly violent nature. In considering this conflicting testimony the trial court apparently found Francis' testimony more credible. Since the trial court is in the best position to weigh the credibility of witnesses' testimony, we will not disturb the trial court's judgment. See *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77. Consequently, the record does not support Willoughby's contention that the children's mental and physical health will be in jeopardy if they reside with Wallace. Conversely, there was evidence that Willoughby had failed to take Seth to get his fourth DTAP immunization

booster shot. The record reflects that Willoughby was notified of Seth's failure to receive the shot several times within a span of three years. Willoughby, however, never took Seth to receive the shot. Instead, Willoughby filed an immunization waiver form stating that Seth was too old to receive the shot. While it may seem inconsequential that Seth missed the fourth DTAP booster shot, the event is telling of Willoughby's interest in her children's health. Accordingly, we find that there was competent, credible evidence to support the trial court's finding that this factor favored Wallace.

{¶36} Next, with respect to factor (g), Willoughby contends that Wallace has, on occasion, failed to stay current in his child support. Although the trial court found otherwise, the record does reveal that in 2004 Wallace was found in contempt for not staying current in his child support payments. Since then Wallace has apparently made up any arrearages and has remained current in his child support payments.

{¶37} Last, with respect to factor (h), Willoughby contends that Wallace abused her, and that the 2008 and 2009 spanking incidents are indicative of Wallace's abusive nature. Willoughby's contentions lose sight of what this factor seeks to determine. In considering this factor the court must determine whether a "parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child." R.C.

3109.04(F)(1)(h). The record contains no evidence that Wallace was previously convicted of or pled guilty to a criminal offense involving child abuse. Accordingly, this factor is unavailing.

{¶38} Having explored the foregoing factors in light of the evidence before the trial court, we find that the trial court did not abuse its discretion in finding that it was in William's and Seth's best interest to designate Wallace as the residential parent.

{¶39} Lastly, in response to Willoughby's fourth assignment of error, we find that reading the trial court's judgment entry in its entirety, it is apparent that the trial court considered that the harm likely to be caused by a change of environment is outweighed by the advantages of the change to the minor children. R.C. 3109.04(E)(1)(a)(iii).

{¶40} Accordingly, Willoughby's second, third, and fourth assignments of error are overruled.

*Assignment of Error No. I*

{¶41} In her first assignment of error, Willoughby contends that the trial court erred when it refused to consider additional evidence. Specifically, Willoughby contends that the trial court erred when it refused to consider her request for a guardian ad litem report, an updated psychological evaluation of

Wallace, a second in camera interview with the children, and Wallace's return to work. We disagree.

{¶42} Civ.R. 53(D)(4)(d) governs what the trial court may consider when conducting an independent review of a magistrate's decision. The foregoing provision reads in pertinent part:

> **\* \* \* Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.**

Civ.R. 53(D)(4)(d). Accordingly, the trial court's decision to not review additional evidence is a matter of discretion, and one this Court will not disturb absent an abuse of discretion. The only exception is when the objecting party demonstrates that it could not, with reasonable diligence, have produced the evidence for consideration by the magistrate.

{¶43} Turning to Willoughby's contention, we find that the trial court did not abuse its discretion when it refused to consider the additional evidence presented by Willoughby. As to Willoughby's request for a guardian ad litem report, an updated psychological evaluation of Wallace, and a second in camera interview with the children, she failed to demonstrate that the she could not have produced such evidence for consideration by the magistrate. The magistrate had conducted an in camera review with William and Seth. Willoughby had plenty of

time to request a guardian ad litem report and an updated psychological evaluation of Wallace prior to the final hearing before the magistrate, or at the very least request a continuance to file such requests, but did not. In light of these opportunities, as well as the trial court's discretion in considering additional evidence, we find that the trial court did not abuse its discretion when it denied Willoughby's request for a guardian ad litem report, an updated psychological evaluation of Wallace, and a second in camera interview with the children.

{¶44} In addition to the foregoing requests, Willoughby also requested the trial court to consider evidence that Wallace had returned to work since the magistrate filed its decision. There is not, however, any requirement that trial courts hear evidence about matters which occur subsequent to a trial. Such a requirement could result in a never ending trial and defeat any possibility of finality. Further, considering the magistrate's findings and the grounds upon which the trial court adopted the magistrate's decision, we find that Willoughby was not prejudiced by the trial court's refusal to consider Wallace's recent employment. We therefore conclude that the trial court did not abuse its discretion when it declined consideration of Wallace's recent employment.

{¶45} Accordingly, we overrule Willoughby's first assignment of error.

{¶46} Having found no error prejudicial to Willoughby herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**