[Cite as *In re S.R.L.*, 2013-Ohio-3236.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 98754

---

# IN RE: S.R.L.

# A Minor Child

[Appeal By Vincent Yanak Father/Appellant]

---

## JUDGMENT:
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU 07111635

**BEFORE:** Keough, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 25, 2013

**ATTORNEYS FOR APPELLANT**

Michael J. O'Shea
Ronald A. Annotico
Lipson O'Shea Legal Group
Beachcliff Market Square
19300 Detroit Road, Suite 202
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

Dominic M. Antonelli
Kristen A. Crane
Rieth, Antonelli & Raj
1406 West Sixth Street
Suite 200
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Appellant-father Vincent Yanak ("Father") appeals the judgment of the Cuyahoga Common Pleas Court, Juvenile Division, that denied his motion to modify a shared parenting plan with appellee-mother Michelle Lupica ("Mother"). For the reasons that follow, we reverse and remand.

I.

{¶2} Yanak and Lupica, who never married, are the biological parents of S.R.L., who was born on December 16, 2005. In 2007, Father initiated paternity and parenting proceedings that resulted in a judicial finding that Father was the biological father and an agreed shared parenting plan that was journalized and made the order of the court on July 8, 2008, when S.R.L. was two years old.

{¶3} Pursuant to the shared parenting plan, Mother had parenting time in weeks one and three of each month from Monday afternoon until Friday at 5 p.m. and in weeks two and four from Tuesday afternoon through Friday at 5 p.m. Father had parenting time every weekend — in weeks one and three from Friday at 5 p.m. until Monday afternoon and in weeks two and four from Friday at 5 p.m. through Tuesday afternoon. Mother was designated as the residential parent for school purposes.

{¶4} On April 15, 2011, Father filed a motion to modify the shared parenting plan, alleging that there had been a change in circumstances that warranted a modification of the plan. The evidence at the trial on Father's motion demonstrated that Mother had

moved six times since the shared parenting plan was ordered in 2008. She lived in an apartment in North Olmsted, an apartment in Olmsted Township, and then with her mother for approximately three months until her mother told her she did not want her living with her any longer. Father then allowed Mother, S.R.L., and Mother's other minor child to live with him for approximately six months (from August 2010 to April 2011). Father testified that he asked Mother to move out in April 2011, shortly before he filed the motion to modify, because she repeatedly came home intoxicated or not at all and because of her repeated "run-ins with the law." Mother then lived in Lakewood until June 2011, when she moved to a house in North Olmsted where she still resided at the time of trial.

{¶5} Father testified that he has lived in the same home in North Ridgeville for seven years. He has a salaried position as a manager of cargo services for United Airlines, working Monday through Friday. Although he often works the afternoon to midnight shift, his employer is flexible with his work schedule, which allows him to attend S.R.L.'s medical appointments and after-school activities. Father testified that he has a large extended family that regularly socializes together, and that S.R.L., who was six years old at the time of trial, has close relationships with his family, including a very special relationship with Father's mother. Father's sister testified that S.R.L. has a close relationship with her son, S.R.L.'s cousin.

{¶6} Mother is a bartender. She testified that she bartends at "Reggie's" on weekend nights from 7:30 p.m. to 3:30 a.m., and at "Aces" on Monday and Thursday evenings from 7:00 p.m. to midnight. Mother said that her 13-year-old daughter or a female friend watch S.R.L. when she is working. Mother also testified that she expects her 13-year-old daughter and S.R.L. to get themselves ready, make their lunches, and get to school on school mornings after she has worked because she is sleeping.

{¶7} Father testified that when Mother and S.R.L. were staying with him, Mother frequently abused alcohol. He said that she did not come home at night on five separate occasions and told him later that she was too intoxicated to come home. Several other times, Father had to pick Mother up from a bar and care for her at home because she was intoxicated. Father testified further that on several occasions, although according to the parenting plan it was Mother's day to parent S.R.L., Mother was not home and he could not locate her. Father testified that S.R.L. told him that after Mother had moved from Father's home, she and the 13-year-old were left alone all night while Mother was out.

{¶8} Mother admitted that she was cited on February 10, 2011, for serving alcohol to an underage minor while she was working. She also admitted that she was arrested for a second DUI in the city of North Ridgeville on July 11, 2010, while on her way home from work, and that she pleaded guilty to that DUI on January 11, 2011. Mother insisted, however, that she does not have a substance abuse problem and said that she stopped drinking after Father filed his motion to modify the shared parenting plan.

She admitted, however, that she still "sips" alcohol, does not attend AA meetings, and never gets any professional help for her drinking problem.

{¶9} Father testified that he did not believe that Mother would ever intentionally do anything to harm S.R.L. but that he was concerned about Mother's lack of judgment in caring for her. He described one incident where S.R.L. called him in the early evening crying. When he picked S.R.L. up from Mother's home a short time later, Father learned that S.R.L. had not eaten all day and he saw that she was shivering. He took her temperature, which was 100 degrees. S.R.L. told Father that Mother had been sleeping all day, so she could not tell her that she did not feel well. Father testified about another incident where he had to take S.R.L. to a hospital emergency room because she was dehydrated and Mother had not recognized that S.R.L. was sick.

{¶10} Mother testified that S.R.L., who was in kindergarten in the North Olmsted School District at the time of trial, took skating lessons after school and was in Girl Scouts. Both Mother and Father agreed that S.R.L. was doing well in school, as indicated by her kindergarten report card. Father testified that if he were designated the residential parent for school purposes, he would not necessarily change S.R.L.'s school. He testified further that before S.R.L. started school, he and Mother had "talked pretty thoroughly" about sending S.R.L. to a Catholic elementary school, but that after he asked Mother to leave his home, Mother enrolled S.R.L. in North Olmsted City Schools without consulting him.

{¶11} Prior to trial, the guardian ad litem for S.R.L. submitted a report in which he recommended that Father's motion be granted in part to give Father more time with S.R.L. and because "there is evidence that the child should have stability with school, as well as a parent without legal issues over substance abuse." At trial, the GAL testified that S.R.L. was well-adjusted if slightly spoiled. He stated that Mother appeared to make a "great effort" to care for S.R.L. and, likewise that Father's involvement with S.R.L. was "a plus." The GAL stated further that the interaction of Father's extended family with S.R.L. was positive. The GAL stated that he had concerns about Mother's multiple change of residences and alcohol-related offenses, and that Father could provide more stability with residency and should have more parenting time with S.R.L.

{¶12} The magistrate, who heard the testimony of the witnesses at trial and observed their demeanor, subsequently issued a decision granting Father's motion. The magistrate found that S.R.L. had never been placed in danger as a result of Mother's alcohol-related offenses but that the GAL's and Father's concerns about Mother's multiple moves gave rise to a change in circumstances. The magistrate found that it was in S.R.L.'s best interest to live with Father because he had "proven stability" in residency and could provide stability for her. The magistrate found that Mother and Father lived in close enough proximity to afford consistent visitation without much disruption to S.R.L. Accordingly, the magistrate found that modification of the shared parenting plan was

necessary to serve S.R.L.'s best interest and that any harm to S.R.L. caused by the change was outweighed by the advantages of the change.

{¶13} Mother filed preliminary objections to the magistrate's decision and a request to file supplemental objections after she received the transcript, which the trial court granted. In her preliminary objections, Mother argued that Father had failed to prove that Mother's substance abuse problem was a change in circumstances and, further, that Father was precluded from presenting any evidence of Mother's multiple relocations because he had not asserted in his motion to modify that the moves were a change of circumstances. Mother argued further that the magistrate's finding that a change was in S.R.L.'s best interest was against the manifest weight of the evidence.

{¶14} After the transcript was transcribed, Mother filed supplemental objections. Six days later, without waiting for Father's response, the trial court reversed the magistrate's decision, sustained Mother's objections, and overruled Father's motion to modify the shared parenting plan. The trial court found that the evidence did not demonstrate that Mother's multiple residences were related to her alcohol abuse and, further, that Mother had not consumed alcohol for nearly one year. The trial court also found that Mother had maintained her current residence for more than six months. Accordingly, the trial court found that there had not been a change in circumstances, that it was in S.R.L.'s best interests to not modify the parenting plan, and that any harm to S.R.L. caused by modification was not outweighed by the advantages of the change.

{¶15} Father now appeals from the trial court's judgment denying his motion.

## II. Analysis

{¶16} Father contends that the trial court abused its discretion in denying his motion to modify the shared parenting plan.

{¶17} We begin by noting that a trial court has broad discretion in custody proceedings. *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159, paragraph one of the syllabus. The court's discretion is not unlimited, however, and a decision will be overturned if the trial court abused that discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 17-18 (2d Dist.), citing *Black's Law Dictionary* 11 (8 Ed.Rev.2004). When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶18} In conducting our review, we must make every reasonable presumption in favor of the trial court's findings of fact. *Myers v. Garson*, 66 Ohio St.3d 610, 614, 614 N.E.2d 742 (1993). We give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered

testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶19}** R.C. 3109.04 sets forth requirements for the allocation of parental rights and responsibilities for the care of children, and includes the procedures for modifying shared parenting. To prevail on his motion, Father was required to demonstrate that (1) there had been a change in S.R.L.'s or Mother's circumstances; (2) modification of the existing decree was necessary to serve S.R.L.'s best interest; and (3) the harm likely to be caused by the change was outweighed by the advantages of the change to S.R.L. *See* R.C. 3109.04(E)(1)(a).

**{¶20}** Thus, our threshold inquiry is whether a change of circumstances had occurred since the prior decree. A change-of-circumstances determination is made "on a case by case basis, considering all of the surrounding circumstances unique to each case." *Pryor v. Hooks*, 9th Dist. No. 25294, 2010-Ohio-6130, ¶ 10. The Ohio Supreme Court has recognized that R.C. 3109.04 is intentionally designed to provide some stability to the custodial status of children and "to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a better environment." *Davis,* 77 Ohio St.3d at 418, 1997-Ohio-260, 674 N.E.2d 1159, citing *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982). Accordingly, the Ohio Supreme Court has held that the change must be "a change of substance, not a slight or inconsequential

change." *Davis* at 418. This court has stated that "[w]hile R.C. 3109.04 does not define what constitutes a change of circumstances, courts have generally held the phrase to mean 'an event, occurrence, or situation [that] has a material and adverse effect upon a child.'" *In re: S.M.T.*, 8th Dist. No. 97181, 2012-Ohio-1745, ¶ 6, quoting *In re M.D.D.*, 12th Dist. No. CA2009-06-170, 2010-Ohio-326, ¶ 22.

{¶21} In his motion to modify, Father alleged that there had been a change in circumstances due to Mother's substance abuse problem. At trial, Father produced evidence of Mother's substance abuse issues, as well as evidence that she had moved numerous times since the parenting decree. Mother stridently contends on appeal that Father's presentation of evidence at trial regarding her frequent relocations was "trial by ambush," in violation of her due process rights, because Father did not assert Mother's frequent relocations as a basis for finding a change in circumstances in his motion to amend the parenting plan. Mother contends that Father's motion should therefore be dismissed.

{¶22} Mother refers us to *Abernethy v. Abernethy*, 8th Dist. No. 81675, 2003-Ohio-1528, wherein the father filed a motion to modify spousal support. The affidavit attached to his motion stated only that "there has been a change of circumstances which necessitates a modification." The trial court granted the mother's motion to strike the father's motion. This court affirmed the ruling on appeal, finding that Loc.R. 19(A), which requires the movant to identify the reasons for seeking a change in spousal or child

support, would be rendered meaningless if a simple allegation of "change of circumstances" was sufficient to satisfy the rule. But *Abernethy* is not on point with this case. Unlike in *Abernethy*, Father's motion and affidavit specified the change of circumstances (Mother's substance abuse) that would warrant a modification. Mother's argument is that Father should have been precluded from presenting evidence at trial of any *other* facts that would warrant a modification because he did not specify those facts in his motion or accompanying affidavit.

{¶23} However, Mother made no objection at trial to Father's presentation of evidence regarding Mother's frequent moves. Accordingly, she waived any objection other than plain error on appeal. *State v. Williams*, 51 Ohio St.3d 112, 364 N.E.2d 1364 (1977) (a failure to object at trial constitutes a waiver of all but plain error on the issues on appeal). We find no plain error because, as the Ohio Supreme Court has recognized, "[i]n determining whether a 'change' has occurred, we are mindful that custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering *all* the evidence before him or her * * *." (Emphasis added.) *Davis,* 77 Ohio St.3d at 418, 1997-Ohio-260, 674 N.E.2d 1159; *see also Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846. Accordingly, the trial court did not err in considering Father's evidence regarding Mother's frequent change in residences.

{¶24} Upon review of the evidence, we hold that the trial court abused its discretion in finding there had not been a change of circumstances sufficient to warrant a

change in custody. Unlike the magistrate, the trial court concluded that Father's and the GAL's concerns that Mother had moved repeatedly did not constitute a change in circumstances. We agree that mere concerns about Mother's frequent relocations would be insufficient to give rise to a change in circumstances. It is well settled that relocation of the residential parent, in and of itself, does not constitute a change in circumstances. *Wallace v. Willoughby*, 3d Dist. No. 17-10-15, 2011-Ohio-3008, ¶ 27. "However, it is equally settled that a court may consider any attendant circumstances surrounding a residential parent's relocation that affect the child's welfare in determining whether a change in circumstances has occurred." *Id.*, citing *Hanley v. Hanley*, 4th Dist. No. 47CA35, 1998 Ohio App. LEXIS 2349 (May 22, 1998).

**{¶25}** Here, the evidence demonstrated that Mother's frequent relocations between 2008 and 2011 were directly related to her alcohol abuse. Mother and S.R.L. moved in with Father in August 2010 because Mother's mother told Mother she must leave her house and could no longer live with her. Subsequently, in 2011, Father asked Mother to move from his home because while she lived with him, she frequently came home intoxicated or not at all and had legal issues relating to her alcohol abuse. Thus, Mother's multiple relocations were sufficient to constitute a change in circumstances.

**{¶26}** Furthermore, Mother's second DUI was sufficient in and of itself to constitute a change of circumstances. "A criminal conviction can constitute a change in circumstances under Section 3109.04(E)(1)(a) if the offense has had 'a direct or probable

effect on the child.'" *Barrett v. LeForge*, 9th Dist. No. 26381, 2012-Ohio-5865, ¶ 6, quoting *Neighbor v. Jones*, 9th Dist. No. 24032, 2008-Ohio-3637, ¶ 8.  Although S.R.L. was not in the car when Mother was cited, Mother's second DUI necessarily raised serious concerns about S.R.L.'s safety with Mother.  As the Fifth District stated in *Cossin v. Holley*, 5th Dist. No. 2006 CA 0014, 2007-Ohio-5258, ¶ 50:

> the trial court is not required to sit back and wait until an alcohol-impaired parent fails to protect the safety of a child and injury results * * * in order to reach the logical conclusion that these actions have a negative impact on the well-being of a child.

{¶27} Mother argues that Father knew she was an alcoholic and still entered into a shared parenting plan with her, so her continued alcohol abuse cannot be considered a change in circumstances.  But the evidence demonstrated that Mother never got any help for her substance abuse problem, as Father had hoped, and that her drinking increased after the parties entered into the shared parenting plan. Moreover, Mother's second DUI could indicate a larger problem than Father was aware of when he entered into the shared parenting plan.  At a minimum, it demonstrated Mother's lack of judgment regarding S.R.L., especially  given what was at stake.  *See Oberlin v. Oberlin*, 9th Dist. No. 25864, 2011-Ohio-6245, ¶ 13.  Accordingly, we find that the trial court abused its discretion in finding there had been no change in circumstances.

{¶28} We next consider whether the trial court abused its discretion in finding that a reallocation of parental rights and responsibilities was not in S.R.L.'s best interest. R.C. 3109.04 provides a nonexhaustive list of factors for a court to consider when making

the best interest determination. The magistrate's decision analyzed the best interest factors and concluded that it was in S.R.L.'s best interest to modify the shared parenting plan. Relying on Mother's objections to the magistrate's decision, the trial court analyzed the same factors and concluded that it was not in S.R.L.'s best interest to modify the plan. We find, however, that the trial court's conclusions regarding the best interest factors were not supported by the weight of the evidence.

{¶29} With respect to the wishes and concerns of the child's parents, the trial court found that Father wished to be named the residential parent and legal custodian because of Mother's alcohol abuse and frequent relocations, but determined that this factor did not weigh in Father's favor because Mother "has chosen not to consume alcohol in light of its negative consequences to her and she hasn't consumed alcohol in a year." Mother admitted at trial, however, that "I've not had — I sip. I sip with alcohol." Thus, the trial court's finding that Mother had stopped drinking is contradicted by Mother's own testimony.

{¶30} With respect to the child's and parents' available time, the trial court apparently agreed with Mother's assertion in her objections to the magistrate's decision that she has more available time than Father to spend with S.R.L. because she works weekends, and the only other day that she works while she has parenting time with S.R.L. is alternating Mondays. But Mother specifically testified that she works weekends, as well as every Monday and Thursday. Thus, Mother's representation that she is available

the entire school week to help S.R.L. with her homework is not supported by the evidence. Further, Mother's representation that she is "present virtually every day to assist S.R.L. with getting to school" is contradicted by her testimony that she expects her 13-year-old daughter and S.R.L. to get themselves off to school on the mornings after she works because she is sleeping. In her objections, Mother also argued that "Father is unavailable to participate in any of S.R.L.'s after-school activities." But the evidence at trial demonstrated that Father goes to S.R.L.'s skating lessons after school and has attended her parent-teacher conferences. Furthermore, Father testified that his work schedule is flexible and that if S.R.L. were to become involved in more after-school activities, he would be able to participate.

{¶31} Mother also asserted in her objections that modification of the parenting plan was not in S.R.L.'s best interest because when S.R.L. has parenting time with Father, she spends "virtually all her time" under the care of Father's mother and sister, instead of with Father. The evidence demonstrated that Father's mother sometimes picks up S.R.L. on Friday and puts her to bed if he is working until 10 p.m. or midnight. But Father's timesheets show that Father is off every weekend and available to spend time with S.R.L. And although Father's sister testified that S.R.L. occasionally spends time at her house with her cousins, contrary to Mother's objections, there was no evidence that Father allocates the "vast majority" of his parenting time to his mother and sister.

**{¶32}** In considering the best interest factors, the trial court found that a modification of the shared parenting plan was not in S.R.L.'s best interest because Mother's multiple relocations were not related to her alcohol abuse, she no longer drank alcohol, and, as of the time of trial, had maintained her current residence for approximately six months. As discussed above, however, the trial court's findings relating to Mother's drinking and multiple residences are not supported by the evidence. Rather, the evidence demonstrated that Mother is still drinking and that her multiple residences were, in fact, related to her alcohol use.

**{¶33}** We recognize that the magistrate erroneously concluded that Father and Mother both reside in North Ridgeville when, in fact, Father lives in North Ridgeville and Mother lives in North Olmsted. Nevertheless, as noted in the magistrate's decision, the GAL recommended that Father could provide more stability in residency for S.R.L., a finding supported by the evidence that Father had lived in the same house for seven years. Significantly, the trial court recognized that "the GAL believes that it is in the child's best interest to have the stability in residency," but ignored the GAL's recommendation that Father could provide the most stable residence for S.R.L.

**{¶34}** Because the trial court's conclusions regarding the best interest factors were against the manifest weight of the evidence, the trial court abused its discretion in finding that a modification of the shared parenting plan was not in S.R.L.'s best interest.

**{¶35}** Likewise, we find that the trial court abused its discretion in concluding that any harm caused by the change to the parenting plan was not outweighed by the advantages of the change. The trial court offered no reasoning for its conclusion, even though the evidence demonstrated that Father is able to provide a stable home for S.R.L. and is eager to be the residential, custodial parent.

**{¶36}** Father's assignment of error is sustained. The decision of the trial court denying Father's motion to modify the shared parenting plan is reversed, and the matter is remanded with instructions to the trial court to enter judgment granting Father's motion.

**{¶37}** Reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR