[Cite as *Moore v. Moore*, 2025-Ohio-88.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

ERIC D. MOORE,

Plaintiff-Appellee,

v.

KAYLA R. MOORE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MO 0003**

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of Monroe County, Ohio
Case No. 2022-079

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Michael J. Shaheen*, Shaheen Law Group, for Plaintiff-Appellee and

*Atty. Rebecca L. Bench*, for Defendant-Appellant.

Dated: January 14, 2025

**HANNI, J.**

{¶1} Defendant-Appellant, Kayla R. Moore (Mother), appeals from a Monroe County Common Pleas Court, Domestic Relations Division, judgment entry and decree of divorce. She asserts that the trial court erred by modifying the parties' shared parenting plan without finding a change of circumstances. She further contends that the trial court abused its discretion when it failed to find that Plaintiff-Appellee, Eric D. Moore (Father), committed financial misconduct, failed to find him in contempt, and failed to provide financial compensation to her or award her attorney fees. Mother further asserts that the trial court erred by improperly awarding credits and offsets to Father and failing to divide assets which resulted in Father receiving an improper financial benefit.

{¶2} For the following reasons, we find that the court erred when it modified the shared parenting plan without providing the parties an opportunity to question the Guardian Ad Litem (GAL). We find that we lack jurisdiction to address the issue of contempt sanctions and financial misconduct as it is not a final appealable order. Even if we did possess jurisdiction, however, we would find that the court impliedly addressed sanctions for contempt against Father when it ordered credits for the property and denied all other pending motions. We further find that the court's findings on some of its credits warrant remand for review and explanation. The court shall review and provide support for crediting Father with the expense of well pad reclamation, the entirety of property taxes, and the entire diesel fuel and oil expense. The court shall also review and provide support for its decision to not credit Mother for health insurance payments.

{¶3} Finally, we find that the court erred by not reviewing, considering, and analyzing the $50,000 withdrawn by Father from the parties' joint account.

{¶4} The parties were married on April 29, 2011 and have two minor children.

{¶5} Father filed for divorce on February 18, 2022 and requested an equitable division of the marital assets and designation as residential parent or shared parenting. He also filed for temporary orders, which included restraining the parties from terminating health insurance, allocating debts and expenses during the action, and residential parent designation or shared parenting while the action was pending.

{¶6} The court's March 1, 2022 journal entry restrained the parties from selling

or disposing of individual or jointly-owned real or personal property. The court also restrained them from terminating or modifying insurance or incurring additional debt. The court ordered a temporary orders hearing.

**{¶7}** On March 4, 2022, Mother opposed Father's motion and filed her own proposed temporary orders. She requested spousal support and designation as temporary residential parent. She requested that the court grant Father parenting time on alternating weekends from Friday at 6:00 p.m. to Sunday at 6:00 p.m., and a Wednesday visit from 4:00 p.m. through 8:00 p.m. She also requested that Father pay her $25,000 of the $50,000 he withdrew on January 14, 2022 from a joint checking account.

**{¶8}** The court issued temporary orders on April 4, 2022 after a hearing. The court adopted Mother's parenting time schedule and granted Father parenting time during Week 1 on Wednesday after school until 7 p.m. and Thursday after school until Sunday at 5:00 p.m. For Week 2, the court ordered Father's parenting time as Wednesday and Thursday after school until 7 p.m. The court further ordered that when school was not in session, Father had parenting time during Week 1 on Wednesday at 3:00 p.m. until 7:00 p.m. and Thursday at 4:00 p.m. until Sunday at 5:00 p.m. The court granted Father's Week 2 parenting time when school was not in session as Wednesday at 3:00 p.m. until 7:00 p.m. and Thursday at 3:00 p.m. until Friday at 3:00 p.m. The court applied the standard visitation schedule if the parties could not agree on a holiday schedule. The court ordered the parties to contact the child support agency for a child support calculation with Father as the obligor.

**{¶9}** The court also ordered Father's counsel to hold current and future oil and gas proceeds in his trust account until the final divorce hearing or a future court order.

**{¶10}** On April 25, 2022, the court received the child support calculation worksheet. Father challenged sections of the worksheet and also cited his proposed parenting arrangement. He requested modification to Week 1 from Thursdays after school to Monday with a return to school, and Week 2 from Wednesday after school to Friday, with a return to school. He complained that Mother violated the parenting order by obstructing the start of his weekday parenting time after she removed the children from school before the end of the school day. He also asserted that Mother refused him the

Case No. 24 MO 0003

children during the Easter holiday, and entered the marital home and removed security cameras.

{¶11} Father requested that Mother return the cameras and he asked the court to modify the Gulfport proceeds order that required him to place the money in his attorney's trust account. He attached the property deed showing he acquired the property subject to the Gulfport proceeds before the marriage and the deed showed that the property was only in his name.

{¶12} On June 27, 2022, Mother counterclaimed for divorce.

{¶13} On July 22, 2022, Mother filed a motion for contempt, asserting that Father canceled a car insurance policy by removing his cars and payment information from the account. She alleged Father had to make a payment to continue coverage. Father requested a court order that Mother be responsible for her own car insurance. He asserted that no lapse in coverage existed and he attached documentation.

{¶14} On August 19, 2022, after a hearing, the court issued an entry confirming that the parties reached an interim agreement that extinguished all pending motions and allocated parenting rights and responsibilities on a more permanent basis. The court ordered shared parenting, with Mother as the residential parent for school purposes and both parents for all other matters. The parenting time was Week 1 for Father from Wednesday after school to Sunday at 7:00 p.m., and Week 2 from Wednesday after school to Thursday at 7:00 p.m. The court also outlined the parties' summer parenting schedules. Health insurance was also outlined, as well as Father paying temporary child support of $900 per month. The court also noted that the parties agreed that Mother would be responsible for her own car insurance.

{¶15} The August 19, 2022 entry further provided that: "It is the intention of the parties that subject to an unforeseen circumstance that would rise to a level of a true change in circumstances and/or the wellbeing of the children at either residence, the terms and conditions as set forth herein are intended to be incorporated into the Final Decree of Divorce." A final hearing was scheduled for September 26, 2022.

{¶16} The court continued a number of hearings and ultimately scheduled the final hearing for divorce. It refused further pretrials or mediations.

{¶17} On May 4, 2023, Mother filed a contempt motion alleging Father interfered

with her parenting time from March 31, 2023 to April 2, 2023. She alleged that Father refused to relinquish the children during spring break, which was her designated holiday as per the standard visitation order.

{¶18} On May 11, 2023, Mother filed a motion for interim attorney fees and expenses. She requested $20,000 to hire experts, pay appraisers, and conduct depositions to protect her marital interests. Father opposed the motion, asserting it was inequitable to award fees to Mother because she could not show he committed egregious conduct warranting an award. He also noted that Mother had a well-paying job, did not disclose any experts or invoices for their services, and never sought to modify support. He further explained that the spring break was not during the time Mother alleged visitation interference.

{¶19} On June 5, 2023, the court denied Mother's motion for fees. The court noted that counsel implied at a pretrial hearing that one appraiser would be hired to value all real and personal property. The court stated that if plans changed and counsel was more specific on experts and costs, it would be considered. The court indicated that it would hear the motion for contempt on August 2, 2023.

{¶20} On June 22, 2023, Mother filed a motion for contempt, a motion for finding financial misconduct, renewed her motion for interim attorney fees, a motion for sanctions, and a request for an emergency hearing. Mother alleged that Father spent $258,810 of the $300,000 he deposited into a bank account, despite a court order prohibiting him from depleting marital assets.

{¶21} The court held a hearing and issued a judgment entry on August 9, 2023. The court found the evidence undisputed that Father violated the court's orders to preserve assets. The court ordered that Father transfer the remaining $14,000 from the Gulfport proceeds to his attorney's trust account.

{¶22} The court held in abeyance any ruling on financial misconduct or sanction for Father's contempt violation. The court held that these matters would be addressed at the final hearing. The court denied Mother's request for interim attorney fees, explaining that Mother failed to provide specific information on experts or their costs.

{¶23} The court also took exception to a written comment by Mother's attorney that the court failed Mother. The court struck the attorney's comments from the record

Case No. 24 MO 0003

and cautioned that it would impose sanctions if further baseless and unsupported assertions were made.

**{¶24}** On August 14, 2023, Mother's counsel filed a motion to disqualify the judge. The Ohio Supreme Court denied the motion.

**{¶25}** On August 28, 2023, Father filed a motion to modify child support. He asserted he was earning less money, he had more time to spend at home with the children, and Mother had an increase in wages. The court granted the motion and ordered a child support review by the child support enforcement agency.

**{¶26}** Mother did not object to a review, but she wanted the agency to consider the $250,000 Gulfport payment, and rents and royalties of $90,000 in 2023 as other income. She also filed a motion in limine to prohibit the parties from calling additional expert witnesses or presenting expert reports other than those already disclosed.

**{¶27}** Mother also filed a motion to enforce the August 19, 2022 agreed shared parenting agreement. Alternatively, she requested the appointment of a GAL if the court found the August 19, 2022 shared parenting agreement was no longer enforceable. She also filed a trial brief outlining her position concerning the value of the real property at issue in the case. Father also filed motions in limine to exclude Mother from presenting certain evidence or claims.

**{¶28}** On October 16, 2023, the court issued preparation orders for the October 18, 2023 final hearing. The court stated that it expected to hear testimony and argument on: Mother's motion for contempt regarding parenting time; the parties' temporary order of custody; and "what, if any, 'unforeseen circumstances that would rise to a true change in circumstances and/or the well-being of the children at either residence' exist which would prevent the terms of the parties' Shared Parenting Plan from being incorporated into the final Decree of Divorce." The court noted that if it declined to incorporate the parties' original shared parenting plan into its final divorce decree, it would interview the children. The court further informed the parties that it expected to hear testimony about modifying child support.

**{¶29}** The court also indicated that it would hear testimony about assets concerning Father's motion in limine if Mother did not agree to or acknowledge identified property as pre-marital or separate. It also prohibited the parties from presenting lay or

expert witnesses that had not been disclosed to opposing counsel.

**{¶30}** The final divorce trial occurred over three days, October 18, 2023, November 28, 2023, and November 29, 2023. On November 9, 2023, Mother filed a motion for contempt against Father, alleging that he violated the mutual restraining order three times by using the home equity line of credit.

**{¶31}** On November 20, 2023, the court issued a judgment entry. The court indicated that it would be adopting into its final divorce decree the August 19, 2022 journal entry on the temporary orders for shared parenting. The court found no change in circumstances warranting modification of that agreement, denied the motion to interview the children, and denied the motion to appoint a GAL.

**{¶32}** On November 22, 2023, Father filed a motion requesting modification or abolishment of the interim shared parenting plan. He acknowledged the court's November 20, 2023 order, but requested that the court interview the children, appoint a GAL, and accept his affidavit concerning Mother's disregard of the shared parenting plan. He sought designation as the residential parent or to have equal parenting rights and responsibilities to be detailed in an agreement or order.

**{¶33}** Father also filed a motion to release the oil and gas royalties. He asserted that Mother failed to establish that she had a claim to those proceeds because some were received before the marriage and others after their separation. He stated that he needed the funds to maintain the financial obligations incurred during the marriage. Mother opposed the motion.

**{¶34}** On November 27, 2023, the court issued a journal entry, noting that the parties had filed cross-motions for the appointment of a GAL for the children. The court issued an order appointing a GAL.

**{¶35}** On the same date, Father filed a motion to bifurcate child-related matters from the final hearing. He requested that the court schedule a hearing on child-related issues after the court appointed a GAL and the GAL issued a report.

**{¶36}** On February 15, 2024, the trial court issued its judgment entry and decree of divorce incorporating findings of fact and conclusions of law. The court found that the parties married on April 29, 2011, had two minor children, and separated in February 2023. The court outlined the parties' financial issues relating to real property, personal

property, debts, the Gulfport proceeds, spousal support, farm equipment, cattle, monies held in the trust account of Father's counsel, and child custody, support, visitation, tax exemptions, and health insurance.

**{¶37}** Addressing custody and visitation, the court indicated that it had appointed a GAL. The court adopted all of the GAL's findings and recommendations, which included Mother and Father equally sharing the children under a shared parenting plan, with Father having parenting time on Wednesdays after school until Monday morning to school on alternating weeks, and Wednesday after school to Friday morning on the other weeks. The court also adopted the GAL's recommendation that the parties divide the school's Easter Break long weekend because the children's school district had no spring break. The court further reduced the child support agency's calculation of child support from Father by 50 percent.

**{¶38}** On March 7, 2024, Mother filed a notice of appeal, asserting three assignments of error. The first assignment of error asserts:

> **The Trial Court Erred in Modifying the Terms of the Parties' Shared Parenting Decree Without finding a Change in Circumstances contrary to R.C. 3109.04(E)(1)(a).**

**{¶39}** Mother asserts that the trial court cited no change of circumstances before adopting the GAL's recommendations and modifying the shared parenting plan, which violated R.C. 3109.04(E)(1)(a) and our decision in *Schmidt v. Schmidt,* 2012-Ohio-5252 (7th Dist.). She contends that before a court can modify a shared parenting plan in a *decree*, the court must find a change of circumstances and that the modification is in the best interest of the child. She further asserts that before a court may modify a shared parenting *plan*, the parties may jointly modify the term or the trial court may do so if it is found to be in the best interest of the child.

**{¶40}** Mother maintains that the trial court turned the shared parenting *plan* into a shared parenting *decree* on November 20, 2023 by making it a final order and including it in the decree. She submits that the court was therefore required to find a change in circumstances and that modification was in the best interest of the children before modifying the terms of the shared parenting plan and before adopting the GAL's

Case No. 24 MO 0003

recommended changes.  Mother contends that the court held no hearing, made no such findings, and gave her no opportunity to respond to Father's motion to modify the shared parenting plan.  She alleges a due process violation and abuse of discretion.

{¶41} Mother also asserts that the court violated Civ.R. 75(F) by failing to incorporate the shared parenting plan from November 20, 2023 into the divorce decree and by failing to find that no change in circumstances existed and the plan was in the children's best interests.  Mother submits that the court also violated contract law because the unambiguous intent of the court and the parties was to incorporate the August 19, 2022 shared parenting plan into the divorce decree.  She asserts that the court abused its discretion by failing to do so and allowing the GAL to make changes.

{¶42} Civ.R. 75(F) is entitled "Judgment" and provides in relevant part:

> The provisions of Civ.R. 55 shall not apply in actions for divorce, annulment, legal separation, or civil protection orders.  For purposes of Civ.R. 54(B), the court shall not enter final judgment as to a claim for divorce, dissolution of marriage, annulment, or legal separation unless one of the following applies:
>
> (1) The judgment also divides the property of the parties, determines the appropriateness of an order of spousal support, and, where applicable, either allocates parental rights and responsibilities, including payment of child support, between the parties or orders shared parenting of minor children;
>
> (2) Issues of property division, spousal support, and allocation of parental rights and responsibilities or shared parenting have been finally determined in orders, previously entered by the court, that are incorporated into the judgment;
>
> (3) The court includes in the judgment the express determination required by Civ.R. 54(B) and a final determination that either of the following applies:
>
> (a) The court lacks jurisdiction to determine such issues;

(b) In a legal separation action, the division of the property of the parties would be inappropriate at that time.

**{¶43}** The trial court issued the November 20, 2023 judgment entry after the first day of the divorce trial and adopted its August 19, 2022 temporary order which included the parties' negotiated shared parenting plan. However, the court made no determinations regarding property division, spousal support, or child support in the November 20, 2023 judgment entry. Thus, Civ.R. 75(F)(1) did not apply to make this judgment a final judgment.

**{¶44}** Further, the court did not incorporate into its judgment entry any prior final orders of property division, spousal support, or parental rights and responsibilities or a shared parenting plan. While the court did adopt the August 19, 2022 entry regarding shared parenting, it was a temporary order. Accordingly, Civ.R. 75(F)(2) does not apply to make the November 20, 2023 judgment entry a final judgment.

**{¶45}** Finally, the court did not include the express determination language in its November 20, 2023 judgment entry. Thus, the November 20, 2023 judgment was not a final judgment under Civ.R. 75(F)(3).

**{¶46}** Accordingly, the November 20, 2023 judgment was not a final judgment and the court was free to revise it at any time prior to its final judgment of divorce. Consequently, Mother's assertions that the court could not modify the November 20, 2023 judgment are without merit.

**{¶47}** The court could therefore revise the shared parenting plan in its February 15, 2024 judgment and divorce decree. During the divorce trial, Appellee's motion for a GAL and modification of the shared parenting plan were briefly addressed. On the first day of trial, the court explained that it previously adopted its temporary order on shared parenting, but it would not incorporate it into the final divorce decree if unforeseen circumstances arose affecting the best interests of the children. (Oct. 18, 2023 Tr., 298). The court requested that the parties explain if they wanted the temporary shared parenting plan adopted as a final order, or the circumstances that changed if they did not. (Oct. 18, 2023 Tr., 298). Each party provided explanations.

**{¶48}** Mother's counsel asserted that a shared parenting plan was already in place because the court stated that it would incorporate the plan into the divorce decree. (Oct.

18, 2023 Tr., 308). Counsel reasoned that Father had to show a true change of circumstances before a modification of the shared parenting plan could occur. (Oct. 18, 2023 Tr., 309). She maintained that Father's only reason requesting modification was because he and Mother did not get along, which did not constitute a true change of circumstances to warrant modification. (Oct. 18, 2023 Tr., 312).

{¶49} Father's counsel disputed the standard as one for a change of circumstances. (Oct. 18, 2023 Tr., 318). He submitted that the standard was whether the modification was in the best interests of the children. (Oct. 18, 2023 Tr., 318).

{¶50} The court stated that it would schedule a second trial date and hold a pretrial telephonic conference to address issues that had arisen, including custody. (Oct. 18, 2023 Tr., 324-325).

{¶51} On the second day of trial, the court noted that following its November 20, 2023 order, Father filed a motion to appoint a GAL and he requested bifurcation. (Nov. 28, 2023 Tr., 637). The court stated that it was not changing its order, but the court was unsure it "can prevent people from asking for a Guardian." (Nov. 28, 2023 Tr., 639). Mother's counsel stated she had not seen the court's order or Father's motion for a GAL, but she could "wing it" when the court indicated it would give her time to review the filings. (Nov. 28, 2023 Tr., 640).

{¶52} Mother's counsel argued that the trial court could not make further orders concerning the children because its November 20, 2023 order was a final order. Mother's counsel stated she could get law together to support her position.

{¶53} On November 27, 2023, the court issued a journal entry stating that cross-motions for the appointment of a GAL were pending. (Nov. 27, 2023 J.E.). The court appointed a GAL and outlined the GAL's duties, which included conducting an investigation and preparing a written report with recommendations to the court. (Nov. 27, 2023 J.E.).

{¶54} The journal entry ordered the GAL to file a report and make it available to the parties for inspection "no less than seven (7) days before the final hearing unless the due date is extended by the court." (Nov. 27, 2023 J.E.). The court indicated that it would consider the GAL's recommendations only when the report was admitted as an exhibit. (Nov. 27, 2023 J.E.). The journal entry further ordered the GAL to appear at all hearings

and proceedings.  (Nov. 27, 2023 J.E.).

**{¶55}** On November 29, 2023, the last day of the divorce trial, no child-related issues were discussed.

**{¶56}** The GAL apparently conducted an investigation, and issued a report, although the report is not in the record before this Court.  The court adopted the GAL's recommendations in its February 15, 2024 judgment entry and decree of divorce.

**{¶57}** The trial court violated due process and abused its discretion when it considered the GAL's findings without providing the parties an opportunity to cross-examine the GAL.  *See Schill v. Schill*, 2004-Ohio-5114, ¶ 59 (11th Dist.) (just as in a permanent custody determination, due process requires that the court in a divorce action grant the parties a right to cross-examine a GAL about the GAL's report and its recommendations).  "Without these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made statements." *In re Hoffman*, 2002-Ohio-5368, at ¶ 25.

**{¶58}** In its February 15, 2024 judgment entry and decree of divorce, the court stated that it received and reviewed the GAL's report on February 14, 2024.  The court issued its judgment entry and divorce decree one day after receiving the GAL report.  The docket shows no hearing or opportunity for the parties to object to the report or to request a hearing.

**{¶59}** Further, the court incorrectly stated that it received cross-motions for a GAL appointment as it had denied Mother's request for a GAL well before the November 27, 2023 order.  Moreover, Father had filed a motion to bifurcate the GAL and child-related issues from the divorce trial and he requested that the court hold a hearing *after* the GAL report was issued.  The court instead issued its final judgment and divorce decree one day following its receipt and review of the GAL report.

**{¶60}** For these reasons, Mother's first assignment of error has merit and is sustained.

**{¶61}** In her second assignment of error, Mother asserts:

**The Trial Court abused its discretion by failing to issue a decision on financial misconduct, impose sentence and sanctions against the**

**husband after finding him in contempt, and provide financial compensation to the wife and award her attorney fees.**

{¶62} Mother asserts that immediately before filing for divorce, Father removed $50,000 from the parties' joint bank account and deposited it into a separate account. She further asserts Father also deposited $250,000 in proceeds from Gulfport into a separate account for reclamation on their 99 acres of land.

{¶63} Mother explains that at the March 23, 2022 temporary orders hearing, the court ordered Father to deposit the $250,000 and any other future proceeds into his counsel's trust account until the final hearing or a future order. Mother complains that Father never deposited the $250,000 and she filed a contempt motion in May 2022 based on his failure to comply with the court's order. She also notes that she referenced the $250,000 in her motion for contempt over shared parenting and in her motion for expert and legal fees. The court overruled her request for equal access to these funds.

{¶64} Mother contends that she filed another motion for contempt after Father spent $258,810 of the funds he was supposed to deposit into his counsel's trust account. She requested a finding of contempt and financial misconduct, and the award of fees and sanctions. Mother submits that at the contempt hearing, Father admitted removing $50,000 from their joint account before filing for divorce, and he admitted he never deposited the $250,000 into his counsel's trust account. Mother asserts that Father stated that he had only $40,000 left as he spent that money on vacations, expenses, child support payments, and bills.

{¶65} Mother cites the court's August 9, 2023 judgment entry finding Father in contempt. She submits that the court deferred sentencing and sanctions until a final hearing and informed the parties it would rule on financial misconduct at the final hearing, but it never did.

{¶66} Mother asserts that the trial court abused its discretion by failing to issue a decision on financial misconduct and failing to impose a sanction on Father for contempt. She cites R.C. 3105.171(E)(4) governing financial misconduct in domestic relations cases and our decision in *Lunger v. Lunger*, 2017-Ohio-9008 (7th Dist.) for determining whether financial misconduct has occurred. She also cites *Cooper v. Cooper*, 14 Ohio App.3d 327 (8th Dist. 1984), where the Eighth District held that a contempt adjudication without

a sanction is not a final appealable order. She notes that civil contempt has also traditionally included compensation to the injured party.

**{¶67}** Mother submits that without imposing a contempt sanction or a ruling on financial misconduct, the trial court allowed Father to avoid consequences for blatantly disregarding the court's orders and subjected her to hardship and distress by not making her whole financially as he was spending joint money and she was unable to afford experts for the divorce.

**{¶68}** Neither party challenges the court's finding of contempt against Father. Rather, Mother challenges the court's failure to impose a sanction for Father's contempt and the court's failure to address her motion to find Father committed financial misconduct.

**{¶69}** In its August 9, 2023 contempt order, the court found undisputed evidence that Father used the $250,000 Gulfport reclamation check it ordered into escrow for farm equipment payments, monthly bills, child support, travel, and entertainment. (J.E. Aug. 9, 2023, 5). The court found that Father's failure to preserve this asset violated two court orders. The court ordered that Father deposit the remaining $14,000 of the $250,000 into his counsel's trust account. The court further concluded:

> Without making any finding at this time whether any asset is marital and subject to division or non-marital/separate, this Court merely seeks to preserve ALL ASSETS to ensure an equitable division and/or distribution for the parties once the final hearing has taken place.

(J.E. Aug. 9, 2023, 5).

**{¶70}** The court further stated that it was holding

> in abeyance, any orders for a jail sentence or fine for Mr. Moore as a result of the within Contempt finding. This will be addressed at the final hearing.

> The court also holds in abeyance any finding of financial misconduct against Mr. Moore, as requested by Defendant's counsel in her Motion now before the Court.

(J.E. Aug. 9, 2023, 6).

**{¶71}** Mother's second assignment of error lacks merit. In *Cooper,* 14 Ohio App.3d at 329, the Eighth District Court of Appeals dismissed a mother's appeal of a contempt judgment issued for her interference with the father's visitation rights. The court found the mother in contempt and issued conditions under which she could purge herself of the contempt. *Id.* at 328. The court deferred imposing a sanction for contempt, allowing the mother to purge the contempt. *Id.*

**{¶72}** The mother appealed, but the appellate court found that it lacked jurisdiction to address the appeal. *Id.* The court explained that without a sanction for contempt, it lacked jurisdiction to review the judgment. *Id.* at 329. The court relied on its decision in *Chain Bike Corp. v. Spoke 'N Wheel, Inc.,* 64 Ohio App.2d 62, 64 (8th Dist. 1979), holding that:

> Contempt of court consists of two elements. The first is a finding of contempt of court and the second is the imposition of a penalty or sanction, such as a jail sentence or fine. Until both a finding of contempt is made and a penalty imposed by the court, there is not a final order. The mere adjudication of contempt is not final until a sanction is imposed.

*Id.*

**{¶73}** Similarly here, while the trial court deferred imposing a sanction for its contempt finding against Father, the court dismissed as moot all pending motions for contempt in its final judgment and divorce decree. (Feb. 15, 2024 J.E. 14). In the final order, the court also addressed the monies in the trust accounts, including the $250,000 reclamation check. The court ordered the remaining $14,000 of the proceeds from that check to be released to Mother. The court also deducted $77,168.43 as marital expenses from the $250,000 for items Appellee paid during the pendency of the divorce action for the property, such as property taxes, insurance, fuel, feed and farm supplies. The court mentioned no specific sanction for contempt and made no findings concerning financial misconduct. The court did not hold or schedule any further hearing on these issues, or take further evidence or argument.

Case No. 24 MO 0003

**{¶74}** Without the court's imposition of a sanction, we lack jurisdiction because the court's contempt order is not final and appealable. *Chain Bike Corp.*, 64 Ohio App.2d at 64. Even if we did possess jurisdiction, the trial court impliedly denied sanctions and a finding of financial misconduct when it addressed the $250,000, awarded offsets and credits against it, and dismissed all pending motions. Accordingly, Mother's second assignment of error lacks merit.

**{¶75}** In her third assignment of error, Mother asserts:

**The Trial Court abused its discretion by improperly awarding credits and offsets to husband, and failing to divide assets resulting in an improper financial benefit to husband**.

**{¶76}** Mother contends that the trial court erred in some of the credits and offsets it granted to Father by either ignoring evidence or failing to equitably divide the assets. She submits that this resulted in an inequitable distribution of debts and assets.

### A. INCORRECT MORTGAGE AMOUNT

**{¶77}** Mother first asserts that the court erred in the amount it relied upon for the outstanding mortgage. She notes that the court's reliance on $326,776.11 as the outstanding mortgage is significantly different from the evidence and testimony of both parties. She submits that both parties stipulated that the mortgage as of October 1, 2023 was $303,303.54. (Nov. 29, 2023 Trial Tr., 764, 787, 842). She cites her trial exhibit 18, which is a billing statement from FarmCredit showing that as of September 6, 2023, the ending balance on the mortgage was $303,303.43. (Mother's Exhibit 18). She asserts that the court abused its discretion by substituting its own amount without explaining the evidence it relied on for the amount.

**{¶78}** "A trial court has broad discretion in determining the proper grounds for divorce, and a reviewing court will not reverse that determination absent an abuse of discretion." *Gould v. Gould*, 2021-Ohio-3493, ¶ 8 (10th Dist.), quoting *Galloway v. Khan*, 2006-Ohio-6637, ¶ 71 (10th Dist.). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶79} In its February 15, 2024 judgment entry and divorce decree, the court found that the remaining mortgage on the property was $326,776.11. (Feb. 15, 2024 J.E., 3). The court also found that other outstanding debt on the real estate included $16,947.60 for building loans and a line of credit for $58,135.25.

{¶80} The court did not cite support for its mortgage figure. However, Trial Exhibit 1 is a February 28, 2022 statement from FarmCredit which shows a beginning balance of $326,776.11 as of February 1, 2022. (*See* Exhibit T-1 in Father's exhibit book). Father submitted this as an exhibit. In her trial exhibit book, Mother submitted a FarmCredit statement dated September 6, 2023 which showed an ending principal balance of $303,303.54. (*See* Exhibit 18-2 in Mother's exhibit book).

{¶81} The court and counsel discussed these exhibits on the first day of trial. The court asked if the parties had pretrial stipulations, and Father's counsel indicated that he had statements for all of the mortgage and loan balances as of February 2022. (Oct. 18, 2023 Trial Tr., 5). He explained that Mother also had balances on those loans as of September 2023. (Oct. 18, 2023 Trial Tr., 5). He represented that neither party challenged the validity of the statements, but each was proposing that their corresponding balances should apply. (Oct. 18, 2023 Trial Tr., 6).

{¶82} On November 29, 2023, the final day of trial, Father testified on cross-examination that the FarmCredit mortgage was "a little over three hundred thousand, and I don't have the exact number." (Nov. 29, 2023 Trial Tr., 786). When shown Mother's FarmCredit statement, Father stated that the statement showed an ending balance of "$303,303." (Nov. 29, 2023 Trial Tr., 787). When asked by Mother's counsel if "we can all agree that as of September, the principal balance is $303,303.54," Father responded, "Yes. I agree with." (Nov. 29, 2023 Trial Tr., 787).

{¶83} It is unclear why the court relied on the February 2022 mortgage balance since its judgment entry and decree of divorce was issued in February 2024, the court found that the parties separated in February 2023, and the court relied on property appraisals performed in 2023. However, the court had support in the record for the mortgage balance figure it used, and it based its calculation on this balance, as well as the payments Father had made up to that date while the divorce was pending. If the court had used the updated balance provided by Mother, it would have had to subtract Father's

additional payments up to this more recent time from the Mother's equity interest. Mother fails to show that this would have resulted in any additional recovery amounts for her.

## B. CREDIT FOR EXPENSES PAID OUT OF $250,000

**{¶84}** Mother contends that the court abused its discretion by granting Father a credit of $77,168.43 against the amount owed her for six categories of expenses. She asserts that the money used by Father to pay these expenses came from the $250,000 that the court found Father in contempt for spending. She submits that this reduced her half of the $250,000 and she was never consulted on or approved of using this money for these expenses.

**{¶85}** Mother contends that the court should not have granted Father credits for paying the marital debt pending divorce proceedings because she had no input into the bills that were paid or how the money was spent.

**{¶86}** She challenges six categories of expenses that the court credited Father.

### 1. Trucking/labor well pad reclamation $23,120

**{¶87}** Mother asserts that the court's award of this credit is an abuse of discretion because it contradicts the court's previous findings that no efforts were made for reclamation and no money was used for reclamation. She also notes that the court referred to exhibit 10n as the exhibit for the reclamation, but this exhibit is a spreadsheet for payments toward "Cattle Building & Pond Road Construction Breakdown." She submits that this exhibit also lacks a date, fails to include receipts, and is contradicted by Father's testimony that these expenses were paid well before the divorce. (Nov. 28, 2023 Trial Tr., 569).

**{¶88}** Father responds that the trial court was within its discretion to find the expenses were marital and Mother fails to provide evidence to the contrary.

**{¶89}** The court's crediting to Father of $23,120 for the trucking/well pad reclamation is questionable. While Mother is correct that the court cited to exhibit 10n, which is entitled "Cattle Building & Pond Road Construction Breakdown," the court's citation does not appear to be incorrect.

**{¶90}** However, during cross-examination of Father at the November 28, 2023 divorce trial, Mother's counsel reviewed exhibit 10n with him. They discussed that it was related to the $23,120 for which Father was requesting credit. (Nov. 28, 2023 Trial Tr.,

571-573). Father acknowledged that the bulk of the work on the pad was performed in 2020, but he explained that a difference existed between reclamation on the property and removing the gravel from the well pad and relocating it somewhere else on the farm. (Nov. 28, 2023 Trial Tr., 569). He acknowledged that the exhibit contained no receipts and he created the document.

{¶91} Mother is correct that the court found in prior judgment entries that no efforts were made for reclamation and no financial resources were used for reclamation. In fact, in its most recent February 15, 2024 judgment entry, the court found that the parties "took no effort to have the property reclaimed by any outside contractors after the estimates they received far exceeded the amount of reclamation funds the parties received." (Feb. 15, 2024 J.E., 5). The court had previously found in its August 9, 2023 contempt order that "[n]ot one cent was used to reclaim the property according to the evidence offered." (Aug. 9, 2023 J.E., 5).

{¶92} However, Father testified that gravel was relocated in conjunction with the diesel fuel and oil exhibit for which he received $12,489 in credit. He testified that there were several hundred semi-truck loads of stone on the well pad and approximately 1,000 tons of stone were removed off of the pad. (Nov. 28, 2023 Trial Tr., 577). He testified that while the pond road referred to in his Exhibit 10n was constructed mainly in 2020, cement work was performed to the culverts because they clogged up when it rained, so he hired others to upgrade the cement and culvert constructed in 2020 to handle the rain. (Nov. 28, 2023 Trial Tr., 571-573).

{¶93} The court's reconciliation of the credit for reclamation expenses with the finding that the parties took no effort to have the property reclaimed is problematic. Accordingly, we remand this issue to the court for further review and explanation.

### 2. Property Taxes $8,375.25

{¶94} Mother challenges the court's credit to Father of $8,375.25 in property taxes as she asserts some of the taxes were for separate property owned by Father.

{¶95} Father provides no argument to the contrary.

{¶96} The court did credit Father with $8,375.25 in property taxes and referenced Father's Exhibit 10i. At the November 29, 2023 divorce trial, Mother's counsel cross-examined Father about this and property taxes for 2022 and 2023. (Nov. 28, 2023 Trial

Tr., 562). Father testified that he paid both years in full over the course of the proceedings and the taxes were paid on all of the properties. (Nov. 28, 2023 Trial Tr., 563). When asked if he wanted credit for paying property taxes on all properties, even those he wanted declared as separate property, Father responded:

A: Well, to be fair, that's where the marital residence is and the buildings and structures, and - -

Q: I think that's very fair.

A: - - and I can't separate the two.

Q: I agree. Can't separate the two. So under that rationale, that - - and you mean you can't separate the two, you mean the marital property and your property at this point?

A: As far as the taxes - -

Q: Sure.

A: I mean, essentially I think what you're asking me is, you know, the real estate I'm claiming as separate, but the house obviously she has a stake in. Should I be charging her for those taxes, but in reality, if it was just bare ground, the taxes would be minimal, a few hundred dollars, because it's signed up with CAUV. So just bare ground, really the taxes aren't that much.

Q. Okay.

A: When it's enrolled in CAUV.

The house and the buildings is what causes the taxes to be as high as they are.

(Nov. 28, 2023 Trial Tr., 563-564).

 **{¶97}** The court provided no explanation on this issue and credited Father with

the full amount in taxes even though Father acknowledged that the credit for property taxes was for payment on all properties, including his separate property. However, the court may have given Father's testimony full credibility that the marital house and buildings were on the properties, which caused an increased valuation for property taxes, which also benefited Mother. Without explanation by the court, we must remand this issue.

### 3. Vehicle and Farm Insurance $5,200.87

{¶98} Mother also assigns error to the court's decision to credit Father with vehicle insurance and farm insurance. She asserts that Father admitted removing her from the car insurance during proceedings, which forced her to buy her own while the divorce was pending. She also submits that she had been paying for health insurance for the children and Father at the cost of $280 per month and did not receive credit for this expense. She contends that this was clear court error and an abuse of discretion.

{¶99} Father responds that Mother cannot seek credit for expenses paid during the divorce proceedings when she never presented them during the divorce hearing.

{¶100} The court provided no explanation for crediting the vehicle and farm insurance beyond referencing Father's Exhibit 10 and finding the $5,200.87 claimed in expenses and payments to be legitimate and attributable to both parties.

{¶101} Mother does not challenge the farm insurance portion of the credit. Further, she provides no separation of the payments made by Father for farm insurance as opposed to vehicle insurance. The court ordered Mother to obtain her own car insurance in its August 19, 2022 temporary order. The court also ordered that Mother obtain her own car insurance as of August 1, 2022. Since the court stated that this was part of an agreement reached between the parties, this issue lacks merit as to Mother's car insurance and the credit for farm insurance.

{¶102} As to a credit for Mother providing health insurance for the children and Father during the divorce proceedings, this assertion has merit. Mother testified at the November 29, 2023 divorce trial that she paid $280 per month for health insurance for a family plan. (Nov. 29, 2023 Trial Tr., 854-855). However, she testified on cross-examination that she was not sure that the payment would decrease if she removed Father from her health insurance plan as she still would pay for a family plan to cover the

children.  (Nov. 29, 2023 Trial Tr., 856-857).  Further, the court ordered both parties to maintain health insurance on the children and gave Father a credit on his child support worksheet for health insurance.  Mother received no credit.

{¶103}  Accordingly, we remand this issue for review and explanation by the trial court.

### 4.  Diesel Fuel and Oil $12,489.12

{¶104}  Mother asserts that the court abused its discretion by crediting Father with a total of $12,489.12 for diesel fuel and oil it deemed a marital expense.  She cites Father's testimony admitting that not all of the fuel was used for the farm as he used some of it for his personal vehicle.  (Nov. 29, 2023 Trial Tr., 579).

{¶105}  Father did testify that a "few" of the receipts submitted in Exhibit O for diesel fuel and oil credit were for his personal vehicle.  (Nov. 29, 2023 Trial Tr., 579).  He further testified that 95% of the receipts submitted were used to actually improve the property.  (Nov. 29, 2023 Trial Tr., 579).

{¶106}  It appears that the court erred in crediting the entire $12,489.12 based on Father's testimony.  Subtracting 95% from the total results in $654.46 less credit to Father.  The court should review and apply this credit.

### 5.  Hay, Feed, and Supplies $10,756.12

{¶107}  Mother asserts that evidence fails to support the court's credit to Father of $10,756.12 for hay and feed expenses.  She cites Father's testimony that he included the cost of feeding his father's cattle and spent $2,000 for feed.

{¶108}  Father testified at the November 29, 2023 trial that Exhibit 10p consisted of expenses paid for their daughter's horses, cattle, and sheep.  (Nov. 29, 2023 Trial Tr., 581-582).  He stated that some of the expense was also for feed for his father's cows and he sought credit for that as well because he was reimbursed for this expense when the calves were sold.  (Nov. 29, 2023 Trial Tr., 582).  He estimated that 1/4 of the total was for feed for his Father's cows.  (Nov. 29, 2023 Trial Tr., 583).

{¶109}  The court did not abuse its discretion in crediting Father with all of the expenses in this category, except one.  The court erred by failing to credit Mother with 1/8 of the feed reimbursement after Father's dad sold the calves.  Father testified that 1/4 of the expense was used for feed for his father's cows and he was reimbursed upon the sale

of the calves.  Accordingly, the court should have credited Mother with 1/8 of that reimbursement amount for that expenditure.

### 6.  Farm Supplies $17,227.06

**{¶110}**  Mother asserts that the court erred by crediting Father with this amount when Father gave no detailed testimony about farm supplies.  Mother notes that Father simply agreed when his counsel asked if this expense covered "necessary maintenance, upkeep, repair of the marital assets."  (Nov. 28, 2023 Trial Tr., 533-534).

**{¶111}**  Mother is not accurate in her description of Father's testimony.  Preceding the sentence Mother cites, Father's counsel referenced Trial Exhibit T for farm supplies and loans.  When asked, Father explained that the exhibit was a:

> conglomerate of the places I buy supplies from, things like for example, chemicals to spray the fences with to keep the weeds down, supplies, an example of that would be the building.  It's essentially an old 3-sided shed on the hundred acres that we bought together, it was literally falling down. I bought six posts and paid Brian Dunn to go down and essentially you know, shore up the building so it wouldn't fall over.  Things like that.

(Nov. 29, 2023 Trial Tr., 533-534).  The discussion continued between Father and his counsel, with counsel stating:

> Q. Again, this is your testimony, not mine, but I just want to understand, if I suggested it was for the necessary maintenance, upkeep, repair of the marital assets that we're discussing today, is that fair?
>
> A. Yes, it is.
>
> Q. And if you had not done it, would it had adversely affected the value of this marital asset?
>
> A. Yes, it would.

(Nov. 29, 2023 Trial Tr., 534).

**{¶112}**  Based upon Father's testimony and the exhibit receipts, the court did not

abuse its discretion in crediting Father for these expenses.

**{¶113}** In sum, we find that remand is necessary for the court to review, analyze, and provide explanation as to crediting Father with expenses relating to well pad reclamation, the credit of the entire property tax amount requested by Father, and the total expenses requested by Father for diesel fuel and oil. We further find remand necessary for the court to review and explain why no credit was granted to Mother for health insurance payments.

### C. FAILURE TO DIVIDE FARM EQUIPMENT

**{¶114}** Mother contends that the court also erred by failing to place values on a number of items and to allocate them to a party. She cites Father's Exhibit 19 and her Exhibit 18 and the items listed on the parties' tax returns. She asserts that the court abused its discretion by not dividing all of the assets when there was extensive testimony provided.

**{¶115}** This assertion lacks merit. In its judgment entry, the court set forth a section entitled "Personal Property, Cattle, Farm Equipment," and discussed the appraisals that each party submitted relating to the value of the property, which the court pointed out covered the cattle and farm equipment. (Feb. 15, 2024 J.E., 9). The court also reviewed the testimony of Father's father, who testified that he owned the cattle and the court ruled that this was not marital property as Father's father owned it.

**{¶116}** The court further held that "all the farm equipment" was owned by both parties and deemed it marital property. (Feb. 15, 2024 J.E., 10). The court explained that it could not find any of it separate property since marital debt was owed on it. (Feb. 15, 2024 J.E. 10). The court further determined that the appraisals by both parties' appraisers were reasonable and it used the median of the two, which equaled $189,300. (Feb. 15, 2024 J.E. 10). The court deducted the loans on four pieces of the farm equipment and found that the total equity in the personal property minus the loans was $80,395. (Feb. 15, 2024 J.E. 11). The court divided this by half and awarded Father all of the farm equipment and the debt, after he paid Mother her one-half equity interest of $40,197.50. The court further held that the parties were each entitled to keep all other personal property not specifically mentioned.

**{¶117}** We find that the court provided sufficient explanation and analysis for its

findings. Mother does not point to specific items that the court did not address or analyze. She instead refers us to the parties' tax returns and a list of 169 items in Father's Exhibit 19 that he states are fixtures that he should keep with no value placed on them. That is the extent of her assertion on this issue. It is not this Court's job to sift through all of the items when Mother fails to specify them and the court did not discuss them.

### D. $50,000 REMOVED FROM JOINT BANK ACCOUNT

**{¶118}** Finally, Mother asserts that the court abused its discretion and committed clear error by failing to address a joint account the parties held with Wesbanco. She contends that Father withdrew $50,000 from this account just before filing for divorce. She notes that Father admitted taking this action and the court failed to address the issue, even when she filed a motion requesting return of the money.

**{¶119}** She maintains that the court addressed the $10,000 in cash that she took from the parties' safe during the same period and reduced her overall award by $5,000. Mother concedes that both parties withdrew marital funds, but only she was made to repay the funds. She asserts that the court should have awarded her $25,000 for her share of the $50,000 Father removed from the joint account.

**{¶120}** Father responds that both parties were struggling with finances even before divorce proceedings commenced. He blames Mother's spending habits and notes that he was solely responsible for paying the marital obligations during the pendency of the divorce proceedings.

**{¶121}** Mother is correct that Father testified at the August hearing that he deposited $50,000 into the parties' joint bank account at Wesbanco. (Aug. 2, 2023 Tr., 80). He testified that the $50,000 was left over from oil and gas money from 2021 and other monies, such as his paycheck and Mother's paycheck. (Aug. 2, 2023 Tr. 80, 118).

**{¶122}** Mother's counsel reviewed debits made from the account where Father admitted that he withdrew funds. (Aug. 2, 2023 Tr. 80-83). Father claimed that this money was from proceeds from his separate property.

**{¶123}** The court did not directly address this dispute in its judgment entry and divorce decree and it is uncertain if the court indirectly addressed the issue in its credits, offsets and property settlement for the parties. Thus, this issue requires remand for review and clarification.

**{¶124}** In summary, we find merit to Mother's first assignment of error and part of her third assignment of error. We find no merit to her second assignment of error.

**{¶125}** Accordingly, we reverse the trial court's judgment and remand this case for the court to review and provide support and analysis on its decision to modify the shared parenting agreement after providing the parties an opportunity to cross-examine the GAL as to the GAL report. The court shall also reconsider and provide support and analysis on the credits it chooses to provide Father and Mother, if any, as to the well pad reclamation, the entire amount of property taxes, the reimbursement of feed for the calves of Father's dad, and the entire amount requested for diesel fuel and oil expenses. The court shall also review and explain its decision for not crediting Mother with health insurance payments. The trial court may modify its judgment entry as necessary to address these issues.

**{¶126}** Finally, we reverse and remand this case for the trial court to review and determine the assertions concerning the $50,000 removed from the parties' joint account.

Waite, J., concurs.

Dickey, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's first assignment of error and part of the third assignment of error have merit and are sustained. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division of Monroe County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**